LAW LIBRARY

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

NO. 28392

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

CATHERINE K. HAM YOUNG, Plaintiff-Appellant/Cross-Appellee,
v. LARRY LEE, EDNA LEE, GARY LEE, PIERCE BROSNAN, KEELY
SHAYE-SMITH, et al., Defendant-Appellees/Cross-Appellants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 01-1-0140)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)

Plaintiff-Appellant/Cross-Appellee Catherine K. Ham
Young (**Ham Young**), owner of a downstream[1] land parcel on the
Island of Kaua'i, as well as Defendants-Appellees/Cross-
Appellants Gary Lee (**Gary Lee**), Mr. and Mrs. Larry and Edna Lee
(**Lees**), and Mr. and Mrs. Pierce Brosnan and Keely Shaye Smith-
Brosnan (**Brosnans**), owners and former owners of an upstream land
parcel, appeal from the December 29, 2006 Final Judgment (**Final
Judgment**), entered by the Circuit Court of the Fifth Circuit
(**Circuit Court**),[2] in favor of Gary Lee, the Lees, and the
Brosnans, and against Ham Young, as to both counts in Ham Young's
August 22, 2001 complaint (**Complaint**).[3]  The parties, to the
extent described herein, also seek relief from the following
orders entered by the Circuit Court:

1.    The April 27, 2005 Order Granting in Part and
Denying in Part (a) Gary Lee's Motion for Summary Judgment, (b)

---

[1]     The terms upstream and downstream are used herein simply to
identify the direction of flowing water and not to identify the flowage as a
natural stream, as opposed to a manmade waterway.

[2]     The Honorable George M. Masuoka presided.

[3]     The Final Judgment was also entered in favor of alleged unnamed
agents and/or employees of Gary Lee and the Lees, Defendants John Does 1-10,
who are not parties to this appeal.

the Lees' Motion for Summary Judgment, and (c) Ham Young's Motion for Partial Summary Judgment (**Summary Judgment Order**);

2. The August 4, 2006 First Amended Findings of Fact and Conclusions of Law (**FOFs** and **COLs**), rendered in connection with the Summary Judgment Order; and

3. The October 10, 2005 Order Granting Plaintiff Ham Young's Motion to Join the Brosnans as Party Defendants (**Joinder Order**).

In the proceedings below, Ham Young filed the Complaint that, when liberally construed, seeks: (1) a declaratory judgment that Gary Lee and the Lees, through the actions of their authorized agent Gary Lee, violated Ham Young's statutory riparian rights, common-law appurtenant rights, and/or contractual easement rights (collectively, **Water Rights**) to the free flow of water through an auwai or ditch (**Ditch**) by constructing and operating one or more artificial ponds on the Defendants' property (**Ponds**), as well as permanent injunctive relief requiring the restoration of the Ditch to its original structural condition prior to the operation of the Ponds (**Count 1**);[4/] and (2) money damages for, *inter alia*, damage to Ham Young's land and intentional infliction of emotional distress (**IIED**), allegedly arising from the diversion of water through the Ponds (**Count 2**). The Circuit Court entered summary judgment in favor of Gary Lee and the Lees as to the requested declaratory judgment and money damages claim, but granted a remedial order in favor of Ham Young that is in the nature of mandatory injunctive relief.

Ham Young raises the following points of error on appeal:

---

[4/] No part of the Complaint is labeled as "Count 1." However, based on the parties' arguments and the denomination of "Count 2," we will refer to Ham Young's allegations in support of declaratory and injunctive relief as Count 1.

2

1. The Circuit Court erred as a matter of law in the Summary Judgment Order with respect to paragraphs 1, 2 and 8, which state:

> 1. The Defendants Gary Lee, Larry Lee and Edna Lee's (collectively "Defendants") use of the water from the auwai to fill the ponds located on Defendants' property is not an unreasonable use;
>
> 2. The Defendants' [sic] may take water from the auwai to fill the ponds located on their property and return the water to the auwai;
>
> . . . .
>
> 8. That since the majority of the water is returned to the auwai in almost the same condition as it was taken, the Court finds that the Plaintiff has suffered no damages;

2. Regarding the August 4, 2006 FOFs and COLs, the Circuit Court's FOFs 2, 3, 6, and 12-19 are clearly erroneous, and the Circuit Court's COLs 1, 2, 3, and 4, are wrong as a matter of law. The contested FOFs and COLS state:

> 2. The Court found that Defendants Gary Lee, Larry Lee and Edna Lee (collectively "Defendants") use of the water from the auwai to fill the ponds located on Defendants' property is not an unreasonable use;
>
> 3. The Court further found that Defendants may take water from the auwai to fill the ponds located on their property and return the water to the auwai;
>
> . . . .
>
> 6. With respect to Plaintiff's claims for damages, the Court found that since the majority of the water is returned to the auwai in almost the same condition as it was taken, the Plaintiff suffered no damages.
>
> . . . .
>
> 12. At a status conference hearing on November 9, 2005, the Court asked the parties to seek the expert opinion of a hydrologist concerning Plaintiff's objections.
>
> 13. The BROSNAN Defendants retained the services of Dr. George Yuen, and Mink & Yuen, Inc. to address the Plaintiff's objections.
>
> 14. The Court finds that Dr. George Yuen is a qualified engineer in hydrology and competent to render expert opinions regarding the first amended plans for the Restoration [sic] of the auwai filed herein on July 5, 2006.
>
> 15. Dr. Yuen's January 6, 2006, report was filed herein on January 13, 2006. A Supplemental Report was filed

herein on January 19, 2006. Two additional reports by Dr. Yuen were filed herein on February 21, 2006. The Court hereby accepts and adopts Dr. Yuen's findings contained in said reports.

16. Based on Dr. Yuen's reports and the entire record herein, including the pleadings, motions, affidavits and exhibits, the Court finds that the First Amended Proposed Plans for Restoration of Auwai filed on July 5, 2005, are reasonable and acceptable to the Court with the exception of the diameter of the two intake pipes.

17. The Court accepts Dr. Yuen's recommendation that the intake pipes be reduced to 8". The Court is also recommending that two intake pipes of 6" be installed adjacent to the 8" intake pipes, with an open/close valve so if the 8" pipes are allowing too much water to flow into the ponds, their valves may be shut and the 6" vales [sic] may be opened.

18. The Court adopts Dr. Yuen's finding that 8" inlets would provide good circulation in the pond resulting in a turnover time of one to two days, and that such a circulation period would be desirable. A six inch inlet would result in a turnover time of up to four days which may not produce satisfactory circulation, and could give rise to clogging problems which would make maintenance more costly.

19. The Court also notes Dr. Yuen's finding that the capacity of the proposed auwai is much greater than that required to carry maximum anticipated flow from Wainiha River and demands for taro farming, and
> Restoration of the auwai would not increase flows to the taro farmers. There may be a question as to the necessity of restoring the auwai at this time. The owner may wish to consider the option of deferring action until future conditions and needs justify the restoration.

Yuen Report, page 7, filed on January 13, 2006.

. . . .

CONCLUSIONS OF LAW

1. The Hawai'i Supreme Court in *Rodrigues v. State*, 52 Haw. 156, 166, 472 P.2d 509 (1970), re-evaluated the law of surface water in Hawai'i and adopted the reasonable use rule.

2. The reasonable use rule allows each possessor of land to alter the flow of surface water so long as his interference with the flow is not reasonable under the circumstances of the particular case.

3. Defendants' ponds are a reasonable use of their property and the flow of surface water into the ponds does not unreasonably interfere with the flow of water to downstream property owners and taro farmers.

> 4. Since the majority of the water is returned to the auwai in almost the same condition as it was taken, Plaintiff has suffered no damages and she is awarded none.

The Lees raise the following points of error in their cross-appeal:

1. This court has no appellate jurisdiction because the Circuit Court retained jurisdiction over the restoration of the Ditch; and

2. The Circuit Court erred in ordering restoration of the Ditch because Ham Young suffered no damages, the defendants' use of the water from the Ditch did not interfere with the flow of water to Ham Young's property, and the elements for injunctive relief were not met.

Gary Lee raises the following points of error in his cross-appeal:

1. The Circuit Court erred as a matter of law when it required Gary Lee and the Lees to restore the Ditch to the condition that it was in prior to the construction of their improvements to their property; and

2. The Circuit Court erred as a matter of law when it added the Brosnans as defendants, as opposed to substituting them for Gary Lee as the real-party-in-interest.

The Brosnans raise the following points of error in their cross-appeal:

1. The Circuit Court erred as a matter of law when it imposed a remedy (restoration of the Ditch) after determining that Ham Young's Water Rights had not been violated and that the defendants had a right to use water from the Ditch;

2. The Circuit Court erred as a matter of law when it ordered restoration of the Ditch after the Court determined that Ham Young neither suffered nor proved damages;

3. The Circuit Court erred as a matter of law when it found that the Ditch was damaged or altered; and

4.    The Circuit Court erred as a matter of law when it arbitrarily and capriciously ordered that the Ditch be restored according to the court's own standard (adding two 6" intake pipes) in substitution for expert judgment.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the parties' points of error as follows:

Ham Young's Appeal

1.    With respect to the Summary Judgment Order, we conclude:

a.    The Circuit Court did not err with respect to paragraphs 1 and 2 of the Summary Judgment Order.  It is undisputed that in 1947, in partition action McBryde Sugar Company, Ltd. v. Aarona, et al., Equity No. 109 (**Equity No. 109**), the Circuit Court of the Fifth Circuit appointed three commissioners (**Commissioners**) to divide a parcel of land known as the Hui Lands of Wainiha (through which the Ditch ran) into multiple, neighboring parcels.[5/]  On December 23, 1947, the Commissioners, in connection with the Equity No. 109 partition action, executed a Commissioners' Deed which conveyed six of those parcels (Lots 209, 224, 231, 266, 267, and 298) to members of the Tai Hook family as tenants-in-common (**Tai Hook Commissioners' Deed**).[6/]  The conveyance of Lot 267, which is also physically divided by the Ditch (as well as itself being adjacent to the Wainiha River), included an express "Ditch Easement"

_____

[5/]    It appears from the plat maps submitted by the parties that the Hui Lands of Wainiha are part of a river delta, with the Wainiha River running on both sides.  The Ham Young Property is adjacent to the river.  The Lee Property is also located on this delta and adjacent to the river, separated from the Ham Young Property by other parcels.  The Ditch Easement runs through the delta, apparently exiting back into the river after it runs through the Ham Young Property.

[6/]    Co-grantee Henry Tai Hook and wife, Annie Tai Hook, are the parents of Ham Young, who was born in 1930.

(**Ditch Easement**) running in favor of Lot 267 and against upstream property owners. In 1979, Ham Young purchased Lot 267, which she has retained to the present (the **Ham Young Property**).[1/]

The Ditch Easement set forth in the Commissioners' Deed provides for the free flowage of water, as follows:

> Subject, however, to an easement for a trail and subject further to the free flowage of water in all auwais, ditches and streams in favor of all those entitled thereto as exist on the ground and as shown on a map thereof filed with the Final Decree of Partition in the Fifth Circuit Court, Territory of Hawaii, in Equity Proceedings No. 109.

The Final Decree of Partition states the right conveyed by the Ditch Easement as follows:

> That upon the lower lands on which are situated all of the allotted lands, are certain irrigation ditches which were constructed many years ago and which have been continuously in use for many years past in diverting a portion of the water of said Wainiha River for the purpose of irrigating such lower lands; that the continuation of the right to such use of a portion of the water in said Wainiha River will enhance the value of said allotted lands and such water rights should be made appurtenant to said allotted lands.

On or about October 7, 1948, the Commissioners entered into an exchange deed with Nancy Puulei (**Puulei**) which transferred various property interests between Puulei and the Commissioners (**Puulei Exchange Deed**). The Puulei Exchange Deed subjected Puulei's parcel, which is located upstream but not adjacent to the Ham Young Property, to "all existing easements for auwais, ditches and rights of way in favor of all those entitled thereto." After a series of conveyances in the 1970's and 1980's, on or about October 13, 1989, Gary Lee purchased the Puulei parcel, which, like the Ham Young Property, is physically divided by the Ditch. Thereafter, on or about May 27, 1992, Gary Lee sold the parcel to the Lees (the **Lee Property**).

---

[1/]    The May 29, 1979 Commissioners' Deed, which was recorded on August 13, 1979, conveyed Lot 267 to Ham Young, along with all "rights, easements, privileges and appurtenances thereunto appertaining or belonging or held and enjoyed in connection therewith[.]"

Ham Young has *not* argued that the use of the water from the Ditch to fill the Ponds is unreasonable because circulating the Ponds changes the volume, flow, temperature, turbidity, or other physical characteristic of the water. Ham Young has not argued that the defendants have no right to use water from the Ditch in connection with the Lee Property. Instead, on this point, Ham Young argues the use of the water in conjunction with ornamental Ponds is *per se* unreasonable, regardless of whether it affects the quality, quantity, or other physical characteristics of the water. Put another way, Ham Young argues that she has a right for the water not to pass through the Ponds on the Lee Property, regardless of whether her use of the water is affected.

We conclude, however, that the Circuit Court correctly determined that the Ditch Easement does not include the right to prevent water from circulating through the Ponds. Similarly, we conclude that Ham Young does not have statutory "riparian rights" to the undiverted flow of water through the Ditch.[8] See, e.g., McBryde Sugar Co., Ltd. v. Robinson, 54 Haw. 174, 191-93, 504 P.2d 1330, 1341-42 (1973) (**McBryde I**) (in examining Revised Laws of Hawaii (**RLH**) § 577, prior version of Hawaii Revised Statutes (**HRS**) § 7-1, holding that "the right to 'drinking water and running water' in artificial watercourses constructed by individuals for their own use is excepted by the statute, the term 'running water' must mean water flowing in natural water courses, such as streams and rivers."). We also conclude that Ham Young failed to proffer any evidence that her rights in the water flowing through the Ditch constituted common law appurtenant rights, as there is no evidence in the record that a right to water flowing through the Ditch existed at the time of

---

[8]    As the Ham Young Property appears to be bordered on at least one side by the Wainiha River, Ham Young presumably has riparian rights to the continued flow of the water through that natural water course. However, there is no allegation in this case that the defendants have interfered with such rights.

the Mahele. <u>See</u>, <u>e.g.</u>, <u>Reppun v. Board of Water Supply</u>, 65 Haw. 531, 551, 656 P.2d 57, 71 (1982) ("appurtenant water rights are rights to the use of water utilized by parcels of land at the time of their original conversion into fee simple land").

      b.    The Circuit Court erred, in part, with respect to paragraph 8 of the Summary Judgment Order, which states that "since the majority of the water is returned to the auwai in almost the same condition as it was taken, the Court finds that the Plaintiff has suffered no damages[.]"

      The Circuit Court's ruling is based largely on the report of defense expert S.K. Djou (**Djou**), who assessed the Ditch water entering and leaving the Lee Property. Djou's report, the substance of which was not materially challenged with conflicting evidence, was based on a field study conducted on or about January 29, 2003.[9/] Ham Young did not present any evidence controverting Djou's report regarding the water flowing through the Ditch at the time of his study. However, in her September 22, 2003 affidavit, Ham Young states, *inter alia*:

> 15.  Your Affiant had approximate revenues from the sale of taro during the years 1997 through 2000 as follows:
>
> | Year | Revenue |
> | --- | --- |
> | 1997 | $2,500.00 |
> | 1998 | 3,750.00 |
> | 1999 | 2,050.00 |
> | 2000 | 600.00 |
>
> 27.  Beginning in late 1999, and through 2000 virtually no water flowed through the auwai/ditch easement. The natural flow of water to my property was blocked by Lee, during which time, Lee enlarged and deepened the artificial ponds on the property, built a rock waterfall in the approximate location where the auwai/ditch easement enters

---

    [9/]    Although not raised as a point of error, at page 30 of her opening brief, Ham Young argues that the Circuit Court erred in refusing to strike Djou's expert report and affidavit testimony. HRAP Rule 28(b)(4) provides: "Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented." Here, the Circuit Court's decision to permit Djou's affidavit and testimony was clearly within the discretion of the Circuit Court, notwithstanding the defendants' noncompliance with certain deadlines. <u>See</u>, <u>e.g.</u>, <u>State v. Fukagawa</u>, 100 Hawai'i 498, 503, 60 P.3d 899, 904 (2002).

the Lee property, and cut the walls of the auwai/ditch easement by approximately three to four feet. . . .

. . . .

28. As a result of the flow of water being blocked to my property in late 1999 and through 2000, the taro I had planted in my lo'i did not survive, and the entire crop was lost, including the huli necessary to replant my lo'i. At that time, your Affiant was selling taro to Hanalei Poi Company for forty two dollars ($42.00) per bag.

Viewing the evidence and the inferences therefrom in the light most favorable to the nonmoving party, which we must do, we conclude that the Circuit Court erred, in part, in granting summary judgment in favor of Gary Lee and the Lees on all damages claims. See, e.g., Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008). Ham Young has raised a genuine issue of material fact regarding her claim against Gary Lee and the Lees that the alleged blockage of the water passing through the Lee Property "in late 1999 and through 2000" caused losses to her taro crop during that period. Ham Young's other bare allegations of causation and damages, whether to her land, her crops, or as a result of alleged intentional infliction of emotional distress, are insufficient to withstand summary judgment. See, e.g., GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 525, 904 P.2d 530, 539 (App.), affirmed, 80 Haw. 118, 905 P.2d 624 (1995); Ocwen Fed. Bank v. Russell, 99 Hawai'i 173, 182-83, 53 P.3d 312, 321-22 (App. 2002).[10]

_____

[10] Affidavits from Ham Young and Sean Hickey assert that there is no longer a consistent flow of water to Ham Young's property, apparently even after the alleged "blockage" was alleviated, purportedly due to the Ponds on the Lee Property. However, the Djou Report states, inter alia: "The pond is a landscaping feature. It is a temporary reservoir serving to balance the inflow and the outflow of the auwai system. It also serves as a sediment trap to reduce turbidity. Any water lost between the inlet and outlet would primarily be due to natural evaporation and percolation, which is not significant. There is no water consuming activity on the property." In support of summary judgment, the defendants brought forward this evidence that the diversion of water through the Ponds did not cause a loss of water flowing through the Ditch on the Lee Property. It appears that there are at least three other properties between the Lee Property and the Ham Young Property. In response to the summary judgment motions, Ham Young did not present any

(continued...)

Accordingly, we conclude that the Circuit Court erred in entering summary judgment against Ham Young with respect to the alleged damages to her taro crop in late 1999 and through 2000. We conclude that the Circuit Court did not otherwise err with respect to paragraph 8 of the Summary Judgment Order.

1. With respect to the Findings of Fact and Conclusions of Law, we conclude:

a. The Circuit Court did not err with respect to FOFs 2 and 3, for the same reasons as set forth above regarding Summary Judgment Order paragraphs 1 and 2. The Circuit Court erred in part with respect to FOF 6, for the same reasons and to the same extent as set forth above regarding Summary Judgment Order paragraph 8.

b. Ham Young has failed to support her assertion that FOF 12 is clearly erroneous.

c. Ham Young has made no argument regarding FOFs 13, 16, 17 and 18. Therefore, these points of error are deemed waived. See HRAP 28(b)(7).

d. Ham Young fails to make any discernable argument regarding FOFs 14, 15, 19, and 20. Accordingly, she has not met her burden of demonstrating that they are clearly erroneous. See HRAP Rule 28(b)(7) ("[T]he appellant shall file an opening brief, containing the following sections . . . . (7) The argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on. . . . Points not argued may be deemed waived."); Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawai'i 438, 478, 164 P.3d 696, 736 (2007) ("[A]n appellate court is not obliged to address matters for

---

10/ (...continued)
countervailing evidence that the use of the water on the Lee Property caused the alleged reduction of water flow to her property. Accordingly, the bare allegation that the diversion of the water through the Ponds caused Ham Young to suffer damages is insufficient to withstand summary judgment.

which the appellant has failed to present discernible arguments.")

        e.    With respect to contested COLs 1 and 2, we first note that Rodrigues v. State, 52 Haw. 156, 472 P.2d 509 (1970), adopted the reasonable use rule regarding the disposal of *surface water*, which pertains to a possessor of land's right to alter the flow of surface waters, generally in the context of excess surface waters that occur during heavy rains or flooding. The issues in this case do not pertain to surface waters; rather they pertain to waters flowing from a river through a man-made Ditch. We conclude that COLs 1 and 2 are a correct statement of the law of surface waters in Hawaiʻi under Rodrigues. See Rodrigues, 52 Haw. at 163-65, 472 P.2d at 515-17.[11] Although not directly applicable, the Circuit Court apparently applied the reasonable use rule adopted for surface waters, by analogy, to the circumstances of this case. The Circuit Court did not err, as a matter of law, in applying a reasonable use analysis to an upstream landowner's use of water flowing through a manmade Ditch to a downstream landowner.

        f.    With respect to contested COLs 3 and 4, we conclude that the Circuit Court erred in part, for the same reasons and to the same extent as set forth above regarding Summary Judgment Order paragraph 8 and FOF 6.

The Lees' appeal

        1.    We reject the Lees' argument that this court has no appellate jurisdiction because the Circuit Court retained jurisdiction over the restoration of the Ditch. Here, the Final Judgment was entered on December 29, 2006, and it stated:

> Pursuant to Rule 58, Hawaii Rules of Civil Procedure, FINAL JUDGMENT in favor of the Defendants and against the Plaintiff upon Counts I and II is hereby entered in the above entitled action consistent with the Amended Findings

---

    [11]    The Circuit Court mistakenly cited to page 166 of Volume 52 of the Hawaiian Reports. We consider this to be an oversight or typo, rather than error.

of Fact and Conclusions of Law filed herein on August 7 [sic], 2006.

Consistent with HRCP Rule 58,[12] and the rule in Jenkins v. Cades Schutte Fleming & Wright, 76 Haw. 115, 119, 869 P.2d 1334, 1338 (1994), the Final Judgment, on its face, finalized the previous orders of the Circuit Court because it disposed of all claims, identified the claims for which the judgment was entered, and it specified the parties for and against whom the judgment was entered. The Final Judgment left nothing further to be adjudicated. See, e.g., Casumpang v. ILWU, Local 142, 91 Hawaiʻi 425, 426, 984 P.2d 1251, 1252 (1999). The Circuit Court's retainment of jurisdiction over the restoration of the Ditch was merely an undertaking to supervise enforcement of the judgment or more specifically, the mandatory injunction. See TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 265, 990 P.2d 713, 735 (1999) (citations omitted) ("For example, because the mere filing of a notice of appeal does not affect the validity of a judgment, the circuit court retains jurisdiction to enforce the judgment.")

2. The Lees, like the other defendants-appellees-cross-appellants, contend that the Circuit Court abused its discretion in ordering, in both the Summary Judgment Order and the FOFs and COLS, that "to the extent reasonably possible, the defendants will have to return the [Ditch] to the state it was in prior to any changes being made to it." Although the Circuit Court's orders do not mention injunctive relief, cite any findings in support of such relief, engage in any analysis of likelihood of prevailing on the merits, showings of irreparable harm, or expressions of public interest, we agree with the parties' characterization of this remedial order as injunctive in nature. The Circuit Court, in essence, granted a mandatory injunction in favor of Ham Young and against the defendants.

---

[12]   HRCP Rule 58 requires that "[e]very judgment shall be set forth on a separate document."

13

A mandatory injunction compels one to perform an affirmative act in order to do or undo a previous act. <u>Wahba, LLC v. USRP (Don), LLC</u>, 106 Hawai'i 466, 472, 106 P.3d 1109, 1115 (2005). The purpose of an injunction, in general, is to "protect property or other rights from irreparable injury by prohibiting or commanding certain acts." <u>Morgan v. Planning Dept., County of Kauai</u>, 104 Hawai'i 173, 188, 86 P.3d 982, 997 (2004) (citations omitted). Most injunctions are "prohibitory," meaning that "the matter complained of is a consequence of present conduct and the injunction simply orders a defendant to refrain from engaging in the designated acts." <u>Wahba</u>, 106 Hawai'i at 472, 106 P.3d at 1115 (citation omitted). A mandatory injunction is distinguishable from a prohibitory injunction in that a "mandatory injunction commands performance of certain acts whereas a prohibitory injunction prohibits the performance of certain acts." <u>Legal Aid Soc'y of Haw. v. Legal Serv. Corp.</u>, 961 F. Supp. 1402, 1408 n.3 (D. Haw. 1997).

The Hawai'i Supreme Court has cautioned that "[m]andatory preliminary relief which goes well beyond the status quo is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." <u>Wahba</u>, 106 Hawai'i at 472, 106 P.3d at 1115 (citations and internal quotation marks omitted). That court further stated that "[t]he severity of a mandatory injunction makes it a disfavored option which courts should deny unless the facts and law clearly favor the injured party." <u>Id.</u> (citations and internal quotation marks omitted).

In this case, the Circuit Court denied that Ham Young was entitled to relief on the merits and, with the possible exception of certain damages to Ham Young's taro crop during the late 1999 through 2000 period, we agree. The Circuit Court made no finding or conclusion that Ham Young had any rights in the Lee Property other than to the free flow of water through the Ditch.

Thus, it is not likely that Ham Young will prevail on the merits of her claim of a right to restoration of the Ditch to its original structure. Similarly, there was no showing or finding of irreparable harm. Although there apparently were alterations made to the Ditch, the materially uncontroverted evidence demonstrated that the flow of water was restored by the time of Djou's field study. To the extent that there is merit to Ham Young's public policy argument that she should be entitled to cultivate taro, and thereby exercise traditional practices using water from the Ditch as it enters her land, this argument does not lead to the conclusion that the defendants must necessarily be barred from using the water from the Ditch for the Ponds or that the Ditch must be maintained in a particular configuration on the Lee Property. As discussed above, the Ditch Easement in this case provides Ham Young with a right to the free flowage of water through the Ditch. The cases cited by Ham Young concern other rights and are factually distinguishable.[13]

Accordingly, we conclude that there was no factual or legal basis for the mandatory injunctive relief ordered in this case and the Circuit Court, therefore, abused its discretion when it ordered the defendants, to the extent reasonably possible, to return the Ditch to the state it was in prior to any changes being made to it.[14]

Gary Lee's appeal

1. Gary Lee's first point of error is the same as the Lees' second point of error. As set forth above, we conclude that there was no factual or legal basis for the mandatory

---

[13] For example, in Medeiros v. Koloa Sugar Co., 29 Haw. 43 (1926), the easement consisted of a right-of-way for a ditch, a line was drawn through the words "a flume or" in the original easement document, and therefore the court held that only a ditch, not a flume, was permitted by the easement.

[14] We caution, however, that modifications to the Ditch on the Lee Property that demonstrably and unreasonably interfere with the free flow of water to the Ham Young Property could provide the basis for a mandatory injunction.

injunctive relief ordered in this case and the Circuit Court, therefore, abused its discretion when it ordered the defendants, to the extent reasonably possible, to return the Ditch to the state it was in prior to any changes being made to it.

2.    In support of his argument regarding the substitution of parties, Gary Lee points out that the Brosnans agreed to undertake the restoration of the Ditch.[15/]  However, it does not appear that the Brosnans otherwise assumed liability for the acts performed by Gary Lee and the Lees.  Gary Lee's and the Lees' potential liability for the alleged damages suffered by Ham Young was not extinguished by the transfer of title from the Lees to the Brosnans.  Therefore, we conclude that the Circuit Court did not err when it added the Brosnans as defendants, as opposed to substituting them for Gary Lee as a real-party-in-interest.

The Brosnans' appeal

1.    The Brosnans' first and second points of error are substantially the same as the Lees' second point of error and Gary Lee's first point of error.  As set forth above, we conclude that there was no factual or legal basis for the mandatory injunctive relief ordered in this case and the Circuit Court, therefore, abused its discretion when it ordered the defendants, to the extent reasonably possible, to return the Ditch to the state it was in prior to any changes being made to it.

2.    The Brosnans' third point of error misstates the Circuit Court's ruling.  The Circuit Court did not find that the Ditch was damaged or altered; rather, the Circuit Court stated that "from the Plaintiff's point of view the [Ditch] was "damaged" and from the Defendants' point of view the [Ditch] was "altered[.]"  We conclude that the Circuit Court correctly

---

[15/]    In Haole v. State, the Hawai'i Supreme Court recognized that "private parties may *contract* to indemnify the indemnitee for the indemnitee's own negligence but there must be a 'clear and unequivocal' assumption of liability by one party for the other party's negligence."  111 Hawai'i 144, 151, 140 P.3d 377, 384 (2006) (citations omitted).

characterized the parties' views and, accordingly, did not commit reversible error.

3.    The Brosnans' final point of error is substantively addressed by our conclusion that there was no factual or legal basis for the mandatory injunctive relief ordered in this case and that the Circuit Court, therefore, abused its discretion when it ordered the defendants, to the extent reasonably possible, to return the Ditch to the state it was in prior to any changes being made to it.  Therefore, we need not address the Brosnans' specific argument that the Circuit Court arbitrarily required two additional six-inch intake pipes in conjunction with the mandatory injunctive relief.

For the forgoing reasons, we vacate the Circuit Court's December 29, 2006 Final Judgment to the extent that the Circuit Court entered mandatory injunctive relief in favor of Ham Young and against Gary Lee, the Lees, and the Brosnans, we remand this case for further proceedings on Ham Young's claim that Gary Lee and the Lees caused her to suffer damages to her taro crop in late 1999 and through 2000, and we affirm in all other respects.

DATED:  Honolulu, Hawai'i, April 15, 2010.

On the briefs:

Harold Bronstein
for Plaintiff-Appellant/
Cross-Appellee

Ann H. Aratani
(Ayabe, Chong, Nishimoto,
  Sia & Nakamura)
for Defendants-Appellees/
Cross-Appellants
LARRY LEE and EDNA LEE

Presiding Judge

Associate Judge

Associate Judge

Dean E. Ochiai
Brenda E. Morris
Randall Y. Kaya
Adrian Y. Chang
(Law Offices of Dean E. Ochiai)
for Defendant-Appellee/
Cross-Appellant GARY LEE

Paul Alston
William M. Tam
Shannon M.I. Lau
(Alston Hunt Floyd & Ing)
      and
Max Graham
(Belles Graham Proudfoot
  & Wilson)
for Defendants-Appellees/
Cross-Appellants PIERCE BROSNAN
and KEELY SHAYE-SMITH

NO. 28392; CATHERINE K. HAM YOUNG vs. LARRY LEE, EDNA LEE, GARY LEE, PIERCE BROSNAN, KEELY SHAYE-SMITH, et al.

*Summary Disposition Order*